IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEJANDRO PEREZ HERNANDEZ          :
                                   :
                Petitioner,        :    3:26-cv-909
                                   :    (JUDGE MARIANI)
        v.                         :
                                   :
ANGELA HOOVER, in her official     :
capacity as WARDEN OF THE          :
CLINTON COUNTY CORRECTIONAL        :
FACILITY, *et al.*,                :
                                   :
                Respondents.       :

## MEMORANDUM OPINION

### I.    FACTUAL BACKGROUND

On April 9, 2026, Petitioner Alejandro Perez Hernandez ("Petitioner"), a citizen of Cuba residing in the United States since October 2023, with no criminal record and no final order of removal, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner is currently detained at the Clinton County Correctional Facility within the Middle District of Pennsylvania. The Petition names as Respondents Angela Hoover, Warden of the Clinton County Correctional Facility; Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of Homeland Security ("DHS"); and Pamela Bondi, former Attorney General. (*Id.*, ¶¶ 7-10).

On or about October 13, 2023, Petitioner entered the United States at a port of entry in San Ysidro, California and was paroled into the United States under 8 U.S.C. §

1182(d)(5).[1]  (*Id.*, ¶ 17).  The Notice to Appear indicated that Petitioner was an "arriving alien" and charged as removable pursuant to 8 U.S.C. § 1182(a)(7)(A) because he was not in possession of valid documentation.  (Doc. 1-4 at 2).

On January 17, 2025, Petition filed a Form I-485 with US Citizenship and Immigration Services ("USCIS") under the Cuban Adjustment Act.  (Doc. 1, ¶ 18).  The Cuban Adjustment Act, Pub L. No. 89-732, 80 Stat. 1161 (1966), authorizes adjustment for qualifying Cuban nationals who were inspected and admitted or paroled and satisfy the Act's Requirements.  (*Id.*).  On April 7, 2025, an Immigration Judge ("IJ") terminated

---

[1]      8 U.S.C. § 1182(d)(5) governs parole for certain arriving aliens and provides:

>  **(A)**The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.
> **(B)** The Secretary of Homeland Security may not parole into the United States an alien who is a refugee unless the Secretary of Homeland Security determines that compelling reasons in the public interest with respect to that particular alien require that the alien be paroled into the United States rather than be admitted as a refugee under section 1157 of this title.
> **(C)** The attorney general of a State, or other authorized State officer, alleging a violation of the limitation under subparagraph (A) that parole solely be granted on a case-by-case basis and solely for urgent humanitarian reasons or a significant public benefit, that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this subparagraph to the greatest extent practicable. For purposes of this subparagraph, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

Petitioner's prior removal proceeding. (*Id.*, ¶ 19). Approximately ten days later, the DHS terminated Petitioner's parole. (*Id.*).

On December 9, 2025, Petitioner was encountered following a motor vehicle accident in Pennsylvania. (*Id.*, ¶ 20). ICE officers arrested Petitioner on an immigration warrant and Petitioner has been detained at the Clinton County Correctional Facility since. (*Id.*). Petitioner alleges he has no criminal record in the United States or Cuba, has a stable employment history, a sister in the United States, and a U.S. citizen sponsor committed to ensuring his appearance for all future hearings. (*Id.*, ¶ 24).

Petitioner claims he is being unlawfully detained by Respondents without a bond hearing under the mandatory detention provision of the INA, 8 U.S.C. § 1225(b)(2)(A), instead of the discretionary detention provision of the INA, 8 U.S.C. § 1226(a). This distinction matters because noncitizens detained pursuant to 8 U.S.C. § 1225(b)(2)(A) are not entitled to a bond hearing, whereas noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to a bond hearing before an Immigration Judge. *Patel v. O'Neil*, 2025 WL 3516865, at *2 (M.D. Pa. Dec. 8, 2025) (citations omitted). Petitioner further claims that his detention without a bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution.

As directed by the Court, the Respondents filed a response to the Petition on April 15, 2026. (Doc. 10). The Respondents do not dispute the factual allegations contained in the Petition. Rather, the Respondents set forth legal arguments as to why Petitioner's

detention is lawful under 8 U.S.C. § 1225(b) because he "is an arriving alien." (Doc. 3 at 2) ("Petitioner is an arriving alien mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2) and has no statutory right to release pending his removal proceeding. Therefore, this Court should deny the petition.").

It is undisputed that Petitioner has not been charged with or convicted of a criminal offense and does not have a final order of removal.   It is further undisputed that, at the time Petitioner sought entry in October 2023, DHS classified him as an "arriving alien" and released him on humanitarian parole and ordered him to appear before an IJ on December 23, 2025.   (Doc. 1-4 at 2).

## II.    STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025).  It is well established that a federal

4

habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody.  *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

### III.    ANALYSIS

### A. This Court Has Jurisdiction Over Petitioner's Habeas Petition.

Before addressing the merits, the Court must first address the Respondents' previous position that the Court lacks jurisdiction to grant the writ.  Although Respondents do not seek dismissal of the Petition on jurisdictional grounds, Respondents have in prior habeas petitions directed the Court to three subparagraphs of the INA:  8 U.S.C. §§ 1252(g),1252(b)(9), and 1252(a)(2)(B)(ii) which they claim divest this Court of jurisdiction to hear habeas petitions.  The Court need not dwell on the jurisdictional issues because it has previously rejected the Respondents' jurisdictional arguments, and federal district courts to consider this issue have almost universally held that they have jurisdiction to consider habeas petitions like the one filed by Petitioner.  In short, Section 1252(g) does not apply since Petitioner "does not attempt by this petition to address the commencement, adjudication, or execution of removal orders and their proceedings."[2]  *Soumare v. Jamison*, 2025 WL 3461542, at *2 (E.D. Pa. Dec. 2, 2025) (citing *Reno v. Am.-Arab Anti-*

---

[2]    Section 1252(g) of the INA provides, in relevant part, that: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

*Discrimination Comm.*, 525 U.S. 471, 482 (1999) (jurisdiction stripping under § 1252(g)(2) applies "only to [these] three discrete actions")); *see also Demirel v. Fed. Det. Ctr. Philadelphia*, 2025 WL 3218243, at *3 (E.D. Pa. Nov. 18, 2025) (Section 1252(g) does not bar jurisdiction because the petitioner "seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur)").

Section 1252(b)(9) also does not divest this Court of jurisdiction over the habeas petition, because it "does not reach claims that are independent of, or wholly collateral to, the removal process."[3] *E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d. Cir. 2020) (internal citation and quotation marks omitted). Moreover, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *Id.* ("If 'later' is not an option, review is available now."); *see also Demirel*, 2025 WL 3218243, at *3 ("Later is not an option here, because the Court of Appeals could not 'meaningfully' redress Demirel's purported unlawful denial of release on bond should his final removal be ordered."). The same logic applies here:  later is not an option here because the Court of Appeals could not meaningfully address Petitioner's alleged unlawful detention without a bond hearing.[4]

---

[3]     Section 1252(b)(9) of the INA provides, in relevant part, that "Judicial review of all questions of law and fact, including the interpretation and application of constitutional or statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). These claims must be filed "with an appropriate court of appeals." *Id.* § 1252(a)(2)(D).

[4]     The Third Circuit recent opinion in *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), interpreting 8 U.S.C. § 1252(b)(9), does not strip this Court of jurisdiction. The Court agrees with other district

And section 1252(a)(2)(B)(ii) is inapposite because the Respondents' "statutory detention power is 'not a matter of discretion' to which § 1252(a)(2)(B)(ii) applies."[5] *Soumare*, 2025 WL 3461542, at *2 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Demirel*, 2025 WL 3218243, at *3 ("Section 1252(a)(2)(B)(ii) thus also does not apply here."). In sum, 8 U.S.C. §§ 1252(g),1252(b)(9), and 1252(a)(2)(B)(ii) do not divest this Court of jurisdiction to hear Petitioner's habeas petition.

In addition, although Respondents no longer appear to be advancing an exhaustion of administrative remedies argument, the Court feels it prudent to nevertheless address exhaustion as it has been raised by the Respondents in numerous similar petitions. While habeas petitioners are "ordinarily required to exhaust their administrative remedies," *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996), they "need not exhaust administrative remedies where the issue presented involves only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 434-35 (3d Cir. 2012). Moreover, exhaustion of

---

courts that have addressed this issue and concludes that *Khalil* and 8 U.S.C. § 1252(b)(9) do not divest this court of jurisdiction to rule on Petitioner's habeas petition. *See Giyosov v. Jamison*, 2026 WL 209839, at *1 (E.D. Pa. Jan. 27, 2026) ("The Court concludes that *Khalil* is distinguishable because [petitioner's] petition does not present legal or factual questions that can be meaningfully reviewed alongside review of a final order of removal."); *Kourouma v. Jamison*, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026) ("Unlike the challenge to detention in *Khalil*, Petitioner's challenge here is not 'inextricably linked' to his removal proceedings."). The same logic applies here: *Khalil* does not divest this Court of jurisdiction over Petitioner's habeas petition because his challenge is not "inextricably linked" to his removal proceedings and the Petition does not present factual and legal issues that can be meaningfully reviewed along with a final order of removal.

5        Section 1252(a)(2)(B)(ii) of the INA provides, in relevant part, that "no court shall have jurisdiction to review . . . any other decision or action by the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

7

administrative remedies is also not required when doing so would be futile. *Demirel*, 2025 WL 3218243, at *4. Because the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) "predetermined the statutory issue" Petitioner "has no reasonable prospect of obtaining relief through administrative remedies." *Demirel*, 2025 WL 3218243, at *4 (internal citation and quotation marks omitted). Accordingly, the Petition will not be dismissed for failure to exhaust administrative remedies.

### B. The Court Will Grant the Petition.

Like many other similar situated immigration detainees, Petitioner argues that he is not subject to mandatory detention under Section 1225(b) because he has been residing in the United States for years. Unlike the typical immigration habeas case, *see Patel*, 2025 WL 3516865, Petitioner was granted discretionary humanitarian parole upon his entry to the United States at a port of entry. *Richeme v. Warden*, 2026 WL 937546 (M.D. Pa. Apr. 7, 2026). The Court agrees with Petitioner that Section 1225(b) does not apply to him, because his "grant of discretionary parole" and his release into the United States in October 2023, "means that he is no longer 'seeking admission' within the meaning of § 1225(b)." *Saidov v. Jamison*, 2026 WL 789087, at *3 (E.D. Pa. Mar. 20, 2026); *see also Richeme*, 2026 WL 937646, at *4 (same). As such, the Court will order Petitioner's immediate release from custody.

Respondents claim that Petitioner's legal status as an inadmissible arriving alien subject to mandatory detention is not changed by either the DHS's grant of discretionary

8

parole under 8 U.S.C § 1182(d)(5), or that parole's alleged expiration.  Federal district

courts in this Circuit, however, disagree with Respondents contentions, finding persons

similar situated Petitioner can be detained, if at all, pursuant to 8 U.S.C. § 1226(a).  *See,

e.g., Saidov*, 2026 WL 789087, at *3 ("Respondents assert that the present case is an

'Arriving Alien' case, which they define as 'individuals who presented at a port of entry

without valid entry documents, were paroled into the country under 8 U.S.C. §

1182(d)(5)(A), and, after a passage of time, recently detained under 8 U.S.C. §

1225(b)(2)(A).   While Respondents distinguish this category of cases from 'Hurtado cases,'

they note that both categories share the same authority for mandatory detention under 8

U.S.C. § 1225(b)(2)(A).  Thus, the Court's statutory analysis above applies in this so-called

"Arriving Alien" category of cases."); *Gagiev v. Rose*, 2026 WL 657739, at *1 (E.D. Pa. Mar.

3, 2026) (granting habeas relief to alleged "arriving alien" where petitioner "was granted

humanitarian parole upon his entry to the United States, and that parole was terminated");

*Id.* at *10 ("Nor is [petitioner] subject to mandatory detention under section 1225(b) by virtue

of the termination of his parole.  In reaching this conclusion, we concur with the persuasive

interpretations of numerous courts, both in this district and across the country, which have

found that section 1225(b) does not authorize expedited removal and detention of

noncitizens who were paroled in the United States under section 1182(d)(5)(A).") (collecting

cases); *Richeme*, 2026 WL 937546, at *4 (same); *Vasquez-Rosario v. Noem*, 2026 WL

196505 (E.D. Pa. Jan. 26, 2026) (similar).  Because the Court agrees with the analysis of

9

the federal district court judges who have addressed this issue, it finds that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b) because he is not "seeking admission" into the United States.

There are two statutory provisions of the INA at issue in this matter. 8 U.S.C. § 1225(b) is a statute entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It provides, in relevant part:

**(b) Inspection of applicants for admissions**
   **(2) Inspection of other aliens**
      **(A) In General**
      Subject to subparagraph (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [removal proceedings] of this title.

8 U.S.C. § 1225(b)(2)(A). 8 U.S.C. § 1226, in contrast, is entitled "Apprehension and detention of aliens." It provides, in relevant part:

**(a) Arrest, detention, and release**
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
   (1) may continue to detain the arrested alien; and
   (2) may release the alien on—
      (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
      (B) conditional parole; but
   (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

10

8 U.S.C. § 1226(a).

As the Court previously found, "the overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) but instead are subject to the discretionary detention pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing."[6] *Patel*, 2025 WL 3519895, at *4 (collecting cases).

As before, "the Court finds that the near universal rejection of Respondents' interpretation of the INA by federal district courts to be highly persuasive and will adopt the same approach." *Id.* at *5. Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is unlawful under the INA because the plain language of this provision and the statutory framework of the INA compels a finding that § 1225(b)(2)(A) applies only to noncitizens who are affirmatively seeking admission to the United States, not noncitizens like Petitioner who entered the United States lawfully at a port of entry, released on humanitarian parole, and

---

[6] The Court acknowledges that Respondents cite to the Fifth Circuit's recent decision in *Buenrosto-Mendez v. Bondi*, __ F.4th __, 2026 WL 323330 (5th Cir. 2026), in which the Fifth Circuit—in a 2-1 decision—held that noncitizens like Petitioner were "applicants for admission" to the United States who were "seeking admission" and were thus subject to the INA's mandatory detention provision. The Fifth Circuit's ruling is not binding on this Court. Moreover, the Court finds as persuasive Judge Douglas's dissent. Similarly, the Court is aware of the Eighth Circuit's recent decision in *Avila v. Bondi*, holding that noncitizens are subject to mandatory detention as an "applicant for admission" who was "seeking admission." *Avila v. Bondi*, __ F.4th __, 2026 WL 819258 (8th Cir. Mar. 25, 2026). The Eighth Circuit's holding is not binding on this Court.

has resided in the United States for years.[7] *See Bethancourt Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at * 7 ("For all these reasons, the Court concludes that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States. Accordingly, it does not apply to individuals like Petitioner, who has been residing in the United States 'for over seven years.'"); *see also Patel*, 2025 WL 3516865 at *5 (same).

Like other Courts to address this issue, the Court finds that Respondents' interpretation of the phrase "seeking admission" violates the rule against surplusage, would negate the plain meaning of the text, and make redundant Section 1226(c) mandatory detention of noncitizens who have committed or are charged with certain specified crimes.[8] *See Centeno Ibbara*, 2025 WL 3294726, at *5-6 ("The government's interpretation of § 1225(b)(2) violates the rule against surplusage. If 'an applicant seeking admission' is the same as 'an applicant for admission,' then 'seeking admission' is surplusage. Congress has

---

[7]    The Supreme Court has also acknowledged that 8 U.S.C. § 1226 "generally governs the process of arresting and detaining … **aliens already in the country pending the outcome of removal proceedings**." *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018) (emphasis added); *Id.* at 303 ("As noted, § 1226 applies to aliens already present in the United States."). In addition, despite the Board of Immigration Appeals holding in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens like Petitioner, "[t]his Court owes no deference to an agency's interpretation that conflicts with the statute's unambiguous text." *Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

[8]    "If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (Thomson/West eds., 1st Ed. 2012).

also recently adopted provisions in § 1226 that would be made superfluous under the government's interpretation. If a noncitizen enters the country illegally and is subsequently convicted or charged with certain crimes, these new provisions require that noncitizens be detained without a bond hearing. Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or conviction. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

Here, DHS's Notice to Appear classified Petitioner as an "arriving alien." According to Respondents, the INA expressly permits them to detain Petitioner without bond as an "arriving alien." Respondents' interpretation of the INA, however, "would permit it to treat an immigrant who was inspected at the border and paroled into the United States 'as seeking admission' even if that person arrived in the country years ago." *Saidov*, 2026 WL 789087, at *1. Similarly, Respondents' interpretation of the INA fails to account for the fact that Petitioner was already in the United States for two years when he was apprehended and arrested by Respondents in December 2025. *Id.* Because Respondents granted Petitioner discretionary humanitarian parole and released him into the United States in October 2023, that "means that he is no longer 'seeking admission' within the meaning of 8 U.S.C. § 1225(b)" at the time he was arrested and detained in December 2025. *Id.*, at *3. Because

13

the Court finds that Petitioner is not currently "seeking admission" into the United States, as he is already here, Section 1225(b) does not apply to him.[9]

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted because his mandatory detention under 8 U.S.C. § 1225(b) without a bond hearing is unlawful. Because the Respondents maintain that a bond hearing is not required and the Respondents' interpretation is inconsistent with the INA, Respondent will be directed to immediately release Petitioner Alejandro Perez Hernandez from the custody of the Warden of Clinton County Correctional Facility, and file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Petitioner Alejandro Perez Hernandez has been released from custody. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (acknowledging that a habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); *see also Bethancourt Soto*, 2025 WL 2976572,

---

[9]    Nor does the "entry fiction doctrine" change the Court's conclusion. *Gagiev*, 2026 WL 679119, at *11 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 93 L.Ed. 956 (1953); *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 S.Ct. 1959, 207 L.Ed.2d 427 (2020)). The entry fiction doctrine, "treats noncitizens parolees—for due process purposes—as if they remain at the U.S. border." *Id.* Pursuant to the entry fiction doctrine, the due process rights of "an alien on the threshold of initial entry" is limited to "[w]hatever the procedure authorized by Congress is." *Shaughnessy*, 345 U.S. at 212. The Court finds that the procedure authorized by Congress for persons like Petitioner "who had been paroled into the United States and developed substantial connections within it prior to their detention, is detention pursuant to 8 U.S.C. § 1226—not § 1225." *Gagiev*, 2026 WL 679119, at *11. It will thus adopt the same approach as Judge Kelly of the Eastern District of Pennsylvania in *Gagiev* and conclude that the "entry fiction doctrine" does not apply to Petitioner and that his detention is pursuant to 8 U.S.C. § 1226. *Id.* at *11-12.

14

at *9 (ordering immediate release); *Flores Obando*, 2025 WL 3452047, at *3 (same);

*Kashranov*, 2025 WL 3188399, at *8 (same); *Patel*, 2025 WL 3516865, at *6 (same).

Respondents will further be permanently enjoined from detaining Petitioner under 8

U.S.C. § 1225, absent a compelling change in circumstances.  *See Bethancourt Soto*, 2025

WL 2976572, at *9 (permanently enjoining respondents from detaining petitioner under §

1225 where petitioner did not file a motion for temporary restraining order or motion for

preliminary injunction); *see also Maldonado*, 2025 WL 2985256, at *7 ("The Court grants the

writ of habeas corpus and orders Respondents to release Petitioner within 24 hours. . . .

Following Petitioner's release, Respondents are permanently enjoined from rearresting or

otherwise detaining Petitioner under § 1225(b)(2)."); *Patel*, 2025 WL 3516865, at *7

If Respondents elect to later detain Petitioner under 8 U.S.C. § 1226(a), the

Respondents must provide Petitioner with notice and an opportunity to be heard at a timely

individualized bond hearing, where an IJ will assess whether he is a danger or flight risk.  A

separate Order follows.

Robert D. Mariani
United States District Judge

15